RICHARD R. BEST
REGIONAL DIRECTOR
Lara S. Mehraban
Vanessa De Simone
Christopher J. Dunnigan
John Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0061 (Dunnigan)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> -against- <br><br> KENNETH A. WELSH, <br><br> Defendant. | COMPLAINT <br><br> 21 Civ. 19387 (     ) <br><br> JURY TRIAL DEMANDED |

Plaintiff Securities and Exchange Commission ("Commission"), located at 200 Vesey Street, Suite 400, New York, NY 10281 (New York Regional Office) for its Complaint against Defendant Kenneth A. Welsh ("Defendant" or "Welsh"), residing at 206 Lozier Terrace, River Edge, New Jersey 07661-1709, alleges as follows:

## SUMMARY OF ALLEGATIONS

1.      This case involves the fraudulent misappropriation of at least $2.86 million by Welsh, who until recently was a financial adviser with a large financial institution registered with the Commission as a broker-dealer and investment adviser ("Financial Institution A").  In his

role, Welsh handled investment accounts for the owners of advisory accounts ("clients") and the owners of brokerage accounts ("customers").

2.      Between at least January 2016 and January 2021 (the "Relevant Period"), Welsh used more than a hundred fraudulent Automated Clearing House ("ACH") transactions to transfer funds from his clients' and customers' accounts to credit card accounts held in the names of his own wife and parents, which he used for his personal benefit.  Welsh also caused numerous checks to be fraudulently drawn on his clients' and customers' accounts, which he secretly used to buy gold coins and other precious metals and to pay for his personal expenses. None of these transactions were knowingly authorized by his clients or customers, some of whom were elderly and financially unsophisticated.  In many cases, Welsh intentionally circumvented Financial Institution A's policies and procedures to carry out these transfers, including by manually altering checks.

3.      Welsh frequently sold securities in his clients' and customers' accounts – sometimes only days before the fraudulent transfers – so that cash would be available in the accounts for him to steal.  Welsh did not disclose to his victims that the purpose of these securities sales was to facilitate his scheme, rather than to maximize their investment returns and total assets.

**VIOLATIONS**

4.      By virtue of the foregoing conduct and as alleged further herein, the Defendant violated Sections 17(a)(1) and 17(a)(2) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1), (2)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and

80b-6(2)].

5.      Unless the Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6.      The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)], Exchange Act Section 21(d) [15 U.S.C. § 78u(d)], and Advisers Act Sections 209(d) and 209(e) [15 U.S.C. §§ 80b-9(d) and 80b-9(e)].

7.      The Commission seeks a final judgment: (a) permanently enjoining the Defendant from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering the Defendant to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon; (c) ordering the Defendant to pay a civil money penalty pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers Act Section 209(e) [15 U.S.C. § 809(e)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)], Exchange Act Section 27 [15 U.S.C. § 78aa], and Advisers Act Section 214 [15 U.S.C. § 80b-14].

9.      Defendant, directly and indirectly, made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

10.     Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)], Exchange Act Section 27 [15 U.S.C. § 78aa], and Advisers Act Section 214 [15 U.S.C. § 80b-14].  Welsh's residence and place of business, as well as several of the alleged victims' residences, are within the District of New Jersey, and certain of the acts, transactions, practices and courses of business alleged herein took place in the District of New Jersey.

### DEFENDANT

11.     **Welsh**, age 31, resides in River Edge, New Jersey, and was a registered broker-dealer representative and investment adviser representative at the Fairfield, New Jersey branch of Financial Institution A from September 2012 until he was terminated in June 2021 following the discovery of this alleged conduct.  Welsh holds FINRA series 7, 31 and 66 licenses.

### FACTS

I.     **DEFENDANT ACTED AS A BROKER AND/OR INVESTMENT ADVISER FOR THE ACCOUNTS FROM WHICH HE STOLE FUNDS**

12.     While working for Financial Institution A, Welsh handled multiple brokerage accounts and advisory accounts.  Welsh acted as a broker with respect to the brokerage accounts and an investment adviser with respect to the advisory accounts.

13.     Among other accounts, Welsh handled accounts for Investors A, B, C, D, and E, each of whom held both advisory and brokerage accounts with Financial Institution A.  As described below, Welsh stole funds from each of these investors.

14.     In the case of Investor A and Investors B and C (a married couple with joint accounts), Welsh acted as a broker for the accounts from which funds were stolen.  In his role as a broker, Welsh had access to private financial information about these accounts and their owners, including the names and personal identifying information of the owners, the accounts' cash positions, and account numbers.

4

15.     In the case of Investor D, Welsh acted as the broker for one account from which funds were stolen.  Additionally, Welsh acted as an investment adviser for a second account owned by Investor D, which was converted to a brokerage account in approximately January 2017.  Welsh stole funds from this second account both before and after it was converted to a brokerage account.

16.     In the case of Investor E, Welsh acted as an investment adviser for the account from which funds were stolen.

17.     In his capacity as a broker and/or an investment adviser for Investors D and E, Welsh also had access to private financial information about these accounts and their owners. Additionally, in his capacity as an investment adviser, he provided investment advice to Investors D and E concerning their advisory accounts and, in some instances, made investment decisions on their behalf.

18.     Investors D and E, like Welsh's other advisory clients, paid a fee to Financial Institution A in exchange for Welsh's investment advice and his management of their accounts. Welsh, in turn, was compensated by Financial Institution A based in part on the advisory fees generated from the advisory accounts he managed.

19.     As an investment adviser, Welsh owned his advisory clients, including Investors D and E, an affirmative fiduciary duty of utmost good faith.  As set forth below, Welsh violated his fiduciary duty by misappropriating funds from Investors D and E.

## II.     DEFENDANT MISAPPROPRIATED CLIENTS' AND CUSTOMERS' FUNDS

### A.   *WELSH MISAPPROPRIATED FUNDS USING FRAUDULENT ACH TRANSFERS*

20.     Welsh abused his position as a broker and investment adviser to misappropriate at least $2.86 million from his clients and customers, including Investors A, B, C, D and E.

21.     Welsh carried out his misappropriation scheme in two primary ways.  First, Welsh misappropriated at least $2.59 million by initiating a series of fraudulent ACH transfers, which caused money to be sent from his clients' or customers' accounts to credit card accounts held in the names of his wife or his parents (the "Welsh Family Accounts").  Welsh controlled the Welsh Family Accounts and used those accounts for his own benefit, including to buy luxury goods and make electronic fund transfers to himself.  None of the ACH transfers from Welsh's clients' and customers' accounts to the Welsh Family Accounts were authorized by the relevant account owners.

22.     Each of Investors A, B, C, D and E were victims of this ACH-based fraud.

23.     For example, on June 4, 2018, Welsh initiated an ACH transfer of approximately $45,202 from an advisory account held by Investor E to a credit card account held in the name of Welsh's mother.  Investor E, who is 88 years old, did not authorize any payments to any account held in Welsh's mother's name and was not aware of this transfer at the time it was made.

24.     As another example, on February 8, 2021, Welsh initiated an ACH transfer of approximately $39,185 from a brokerage account held by Investor A to a credit card account held in the name of Welsh's father.  Investor A, who is 76 years old, did not authorize any payments to any account held in Welsh's father's name and was not aware of this transfer at the time it was made.

25.     In total, Welsh made at least 123 such fraudulent ACH transfers to the Welsh

Family Accounts during the Relevant Period.

B.     *WELSH MISAPPROPRIATED FUNDS USING CHECKS THAT HE FRAUDULENTLY OBTAINED*

26.     Second, Welsh fraudulently obtained at least 14 checks drawn on clients' and

customers' accounts at Financial Institution A to buy gold coins and other valuables for himself,

as well as to pay for his own personal expenses.  Welsh misappropriated at least $268,740 from

his clients and customers using these fraudulently-obtained checks.  Each of Investors A, D and

E were victims of this check-based scheme.

27.     In at least seven cases, the checks were paid to a New Jersey coin and stamp

dealer, Coin Dealer A, to purchase gold coins and other precious metals (together, the "coins").

Welsh kept these coins for himself, and did provide any of them to his clients or customers.

28.     For example, on or around December 8, 2017, Welsh caused a check in the

amount of $20,000 to be drawn on Investor E's advisory account.  Welsh tendered this check to

Coin Dealer A in exchange for coins.  Investor E never received any coins or other items of

value as a result of this transaction.

29.     In other cases, Welsh used the checks that he fraudulently obtained to pay for

personal expenses.  For example, on or around January 28, 2016, Welsh caused a check in the

amount of $28,500 to be drawn from Investor D's advisory account, which was payable to an

auto leasing company.  Investor D did not hold an auto lease with this company, and this

payment instead benefitted Welsh.

30.     None of Welsh's clients or customers were aware of or knowingly authorized

these checks.

31.     Instead, Welsh intentionally circumvented Financial Institution A's policies and procedures, which required clients and customers to complete a written authorization form before a check could be drawn on their accounts.

32.     In some cases, Welsh directed the client or customer to sign a blank check authorization form and then later filled in the form himself, without disclosing to the client or customer what the authorization would actually be used for.

33.     In other cases, Welsh gave the client or customer a completed check authorization form, but misrepresented how the authorization would be used.  For example, Welsh falsely claimed that certain check authorizations would be used to purchase legitimate securities investments, when in fact they were used to purchase coins or other items for his own benefit.

34.     In several instances, Welsh physically altered the payee line of a check – which was originally made out to a different payee – so the check could be tendered to Coin Dealer A and used to purchase coins.  For example, the check described in paragraph 28 was originally made out to "CS, Inc.," but then manually altered by Welsh to add an additional letter so that it was an acronym for Coin Dealer A.

## III.    WELSH IMPROPERLY SOLD CLIENTS' AND CUSTOMERS' SECURITIES TO FACILITATE HIS MISAPPROPRIATION

35.     Welsh sold securities in the clients' and customers' accounts to generate cash positions so that he could misappropriate part or all of the proceeds of those sales.  Many of these sales occurred close in time to Welsh's misappropriations of investor funds.

36.     For example, Welsh directed a transaction on July 3, 2019, in which he sold bonds from Investor A's brokerage account for approximately $26,000 and, on the same day, made a fraudulent ACH transfer of approximately $27,000 from Investor A's account to a credit card account held in his father's name.

37.     To facilitate some of his fraudulent transactions, Welsh transferred proceeds from the sales of securities out of the customers' retirement accounts and into their regular brokerage accounts.  For example, on January 27, 2020, Welsh directed a sale of mutual fund shares in Investor A's retirement account for proceeds of approximately $59,993, of which $41,792 was then transferred to Investor A's non-retirement brokerage account.  On January 31, 2020, Welsh transferred approximately $40,159 from Investor A's non-retirement brokerage account to a credit card account held in Welsh's wife's name.

38.     Welsh did not tell his clients and customers that these transactions lacked a legitimate investment purpose and were instead made to facilitate his misappropriation.

39.     Welsh's directed securities sales in the accounts resulted in the clients and customers incurring not only losses, but also missed opportunities to obtain investment gains.

40.     Welsh never disclosed to his clients and customers, including Investors A, B, C, D and E, that he was using funds intended for investment purposes for his own personal benefit, and was selling their securities to facilitate his theft.

## FIRST CLAIM FOR RELIEF
### Violations of Securities Act Sections 17(a)(1) and 17(a)(2)

41.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 40.

42.     Welsh, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud and (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which

9

he were made, not misleading.

43.     By reason of the foregoing, Welsh, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Securities Act Sections 17(a)(1) and 17(a)(2) [15 U.S.C. § 77q(a)(1), (2)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

44.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 40.

45.     Welsh, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which he were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

46.     By reason of the foregoing, Welsh, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF
### Violations of Advisers Act Sections 206(1) and 206(2)

47.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 13, 15 through 23, 25 through 35, and 37 through 40.

48.     At all relevant times, Welsh was an investment adviser under Advisers Act Section 202(11) [15 U.S.C. § 80b-2(11)].

49.     Welsh, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly has: (i) knowingly or recklessly employed one or more devices, schemes, or artifices to defraud any client or prospective client, and/or (ii) knowingly, recklessly, or negligently engaged in one or more transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon any client or prospective client.

50.     By reason of the foregoing, Welsh, directly or indirectly, has violated and, unless enjoined, will again violate Advisers Act Sections 206(1) and 206(2) [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Welsh and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Sections 17(a)(1) and 17(a)(2) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Sections 206(1) and (2) of the Advisers Act;

**II.**

Ordering Welsh to disgorge all ill-gotten gains he received, directly or indirectly, with

pre-judgment interest thereon, as a result of the alleged violations;

**III.**

Ordering Welsh to pay civil monetary penalties under Securities Act Section 20(d)

[15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)], and Advisers

Act Section 209(e) [15 U.S.C. § 80b-9(e)]; and

**VIII.**

Granting any other and further relief this Court may deem just and proper.

Dated:  New York, New York
        October 28, 2021

*Richard R. Best*

RICHARD R. BEST
REGIONAL DIRECTOR
Lara S. Mehraban
Vanessa De Simone
Christopher J. Dunnigan
John Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0061 (Dunnigan)
dunnigancj@sec.gov

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Rule 11.2, I certify that the matter in controversy alleged against the

Defendant in the foregoing Complaint is not the subject of any other civil action pending in any

court, or of any pending arbitration or administrative proceeding.

*Christopher J. Dunnigan*

CHRISTOPHER J. DUNNIGAN
Attorney for Plaintiff
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0061 (Dunnigan)
Email:  dunnigancj@sec.gov

Of Counsel:
Richard R. Best
Lara S. Mehraban
Vanessa De Simone
John Lehmann

## DESIGNATION OF AGENT FOR SERVICE

Pursuant to Local Civil Rule 101.1(f), the undersigned hereby designates the United

States Attorney's Office for the District of New Jersey to receive service of all notices or papers

in this action at the following address:

> David E. Dauenheimer
> United States Attorney's Office
> Deputy Chief, Government Fraud Unit
> District of New Jersey
> 970 Broad Street, Suite 700
> Newark, NJ 07102

> SECURITIES AND EXCHANGE COMMISSION
>
> *Christopher J. Dunnigan*
> _____
> CHRISTOPHER J. DUNNIGAN
> Attorney for Plaintiff
> Brookfield Place
> 200 Vesey Street, Suite 400
> New York, New York 10281-1022
> (212) 336-0061(Dunnigan)
> dunnigancj@sec.gov

Of Counsel:
Richard R. Best
Lara S. Mehraban
Vanessa De Simone
John Lehmann